IsAAC S. WHITTEN, plaintiff in error, vs. JAMES B. KNOX, defendant in error.

Where the only question in the case is, whether or not the verdict be contrary to the proof, it requires a strong case to authorize the Court to set aside the finding of the jury and order a new trial.

Assumpsit, in Hancock Superior Court.    Tried before Judge JAMES THOMAS, ———— Term, 1858.

This was an action of assumpsit brought by James B. Knox against Isaac S. Whitten, upon the following written contract, viz:

A contract between I. S. Whitten and James B. Knox, witnesseth that said Knox agrees to put in a new pier-head and gate at the upper end of Whitten's mill race, where there is now one, to raise the mill-dam ten inches higher than the old dam, so as to raise and to hold the water that much higher than the present one. The framing to be all of oak, the plank of pine. Whitten to furnish the plank and nails, and to haul suitable oak stocks to the mill and allow Knox to saw his scantling and frame works in his saw mill at a time when it will not interfere with the grinding. Knox is to do the work as early this spring or summer, after the weather gets warm, as Whitten may direct. To make a substantial, durable job of the pier-head, dam, and the spiling around the abutments, and warrant the whole not to leak or give way in any way from the force of freshets, &c., and not to stop Whitten's grist mill more than one week. Whitten to board the hands while they are at work on it, and to pay Knox one hundred and twenty-five dollars at the end of the year, if well done. The contract to be understood as to make allowance for providential and unavoidable accidents in detention.

March 16th, 1855.

         [Signed]              JAMES B. KNOX,
                                     I. S. WHITTEN.

## Evidence for Plaintiff.

*George I. Read,* (for plaintiff,) testified that he resided in Greene county, and is a mill-wright by trade; thinks the contract between plaintiff and defendant was made in April, 1855, and that said contract was, that defendant was to pay plaintiff one hundred and twenty-five dollars (he thinks) for raising his mill dam ten inches higher, and for spiling the butments, and making a new pier-head; and plaintiff was to warrant his work to stand, and not to leak; but did not warrant the old dam.   Witness did not see the work until the dam was washed away; the pier-head was standing alone, and was done in a workmanlike manner.   The raising the dam and spiling was worth about seventy-five dollars; the work on the butments and the building of the pier-head was worth fifty dollars.   The part plaintiff built alone was warranted.

*John Drake,* sworn for plaintiff.   Never saw the work while in progress; was at the dam after it had broke.   In August of that year there was the largest freshet that had been in the creek for near forty years; could not state positively whether it was the largest freshet which carried away the dam or not; there remained, after the freshet, the pier-head; the butments and one third of the dam were gone; the way sheeting is put on a dam would not make the rock work of the dam give way.   Plaintiff closed.

## For Defendant.

Defendant offered deposition of *James Whitten:* About 6th January, (1857,) was at the house of defendant in Hancock county, when plaintiff came there, as he stated, to have a settlement with defendant for work done on defendant's dam; they had a conversation about the matter, in which conversation defendant stated to plaintiff, that he, plaintiff, had warranted the work to answer defendant's purpose, and

that it had failed to do so ; which was admitted by plaintiff. In the conversation allusion was made to some previous conversation had between them while the work was in progress, in which it was stated by defendant and admitted by plaintiff, that defendant had complained to plaintiff, that the way plaintiff was doing the work, it would not stand, and requested plaintiff to change the manner of doing the work. The plaintiff refused to do the work in the manner the defendant requested him, and seeing that plaintiff refused to do the work as defendant requested, the defendant proposed that if plaintiff would stop the work, he would pay all the expenses up to that time, which witness understood to mean the wages of the workmen employed by plaintiff in doing the work. It was admitted by both parties that soon after the work was done (which work I understood to be mostly the top work done on an old dam, a freshet came and took away both the old dam and the new work of the dam. By which the defendant said he had been damaged five hundred dollars. In this conversation both parties agreed that at a previous time they had agreed to refer the whole matter to the arbitrament of a Mr. Reed, who had died without making a settlement between them. Elrya Whitten and some members of the family (defendant's) were present a part of the time during the conversation ; on plaintiff's leaving defendant's house, he said he should sue defendant.

Defendant then offered *James Cobb*, who testified that he was the overseer of defendant when the work was done; during the progress of the work, he heard defendant complain of the work ; he complained of the sheeting. Witness told plaintiff what defendant said, and said (to plaintiff). If I were in your place I would do the work as defendant wished it done. Plaintiff replied to witness, that he would do the work as defendant wished. Plaintiff did not change the mode or plan of the work, but finished it as he had commenced ; the length or width of the sheeting on the old dam was about fourteen feet; the rafters or girders

which were put on the old sheeting for the purpose of raising the dam higher, were about half way down.    The dam was raised, but witness couldn't say whether or not it was raised ten inches; never heard defendant express any dissatisfaction to plaintiff about the work while it was in progress; witness was frequently about the dam while it was in progress, helping; dam was broken in August, 1855, but does not know whether or not that was the biggest freshet of that year.    Witness and defendant's negroes were working on the end of the dam at the time it broke, and one of the negroes called attention of witness to the dam; he turned around and saw the rock part and wooden part of the dam tumbling both over at once.

*James Parks,* for defendant, said that in the early part of 1857, perhaps January, he came to Dr. Whitten's to live; since that time he has frequently seen the pier-head and butments of the dam, portions of the plank used in the construction were rotten; there were cracks or openings between the planks, which caused them to leak very badly; that at one place in the pier-head or between the pier-head and butments, such an opening or rent had been gained by the water as to create a waste of water; had been sent there by Dr. Whitten to examine and stop it, which he did; this was in the summer of 1857; witness is no workman; was staying at Dr. Whitten's going to school.

The jury found for the plaintiff.    Defendant moved for a new trial, which the Court refused, whereupon defendant excepted.

E. H. POTTLE, for plaintiff in error.

L. STEPHENS, *contra.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

The only question submitted to us is, whether or not the verdict in this case is contrary to evidence.

After carefully scrutinizing the testimony, we are not prepared to say that the finding is contrary to the proof; certainly it cannot be affirmed of it that it is strongly and decidedly against the weight of evidence.

When a transaction like this is fairly left to the jury, and it is not denied but that this was the conclusion to which they came, it should not be disturbed unless upon clear grounds, indicating mistake or something worse. Nothing of this sort can be properly attributable to the result here. The jury were warranted in believing that the work on the defendant's mill was performed according to contract, and that the failure was occasioned by the deficiency in the old rock work of the dam, and for which the plaintiff was not responsible.

Judgment affirmed.